UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ENCOMPASS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:26-cv-01141-MJD-RLY |
| | ) | |
| SAMSUNG ELECTRONICS AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

Defendant Samsung Electronics America, Inc. has filed a motion to dismiss the complaint for failure to state a claim. [Dkt. 20.] For the reasons explained below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. Legal Standard

A defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint "must allege enough details about the subject-matter of the case to present a story that holds together," *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021), "but it need not supply the specifics required at the summary judgment stage." *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021).

When ruling on a Rule 12(b)(6) motion, the Court "accept[s] the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). "It is enough to plead a plausible claim, after which a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017).

## II. Background

According to the complaint, Defendant designed, manufactured, and sold a residential kitchen range that was purchased and used by Ashley Blay. [Dkt. 1-1 at ¶¶ 2, 3, 6, 7.] On April 22, 2024, the kitchen range caused a fire "after the front-mounted knobs were inadvertently activated by a dog[.]" *Id.* at ¶ 10. At all times, the kitchen range was used for its intended purpose of cooking food and was not modified or altered between the time it was purchased and the time of the fire. *Id.* at ¶ 8. About four months after the fire, Defendant issued a product recall for the kitchen range, stating, "Front-mounted knobs on ranges can be activated by accidental contact by humans or pets, posing a fire hazard." *Id.* at ¶¶ 11-12. The kitchen range was also defective in that it did not use "thermal set plastic," which "is standard for other similar products[.]" *Id.* at ¶¶ 21e, 33c. The lack of thermal set plastic "left the [kitchen range] susceptible to melting and increased fire damage when used in a residential setting[.]" *Id.* Blay did not receive notice of the kitchen range product recall or any other warnings about the kitchen range's defects before the fire. *Id.* at ¶ 14.

Plaintiff Encompass Insurance Company was Blay's insurer and paid her approximately $490,000 for damage caused by the fire. *Id.* at ¶¶ 15-18. Plaintiff now brings a subrogation action against Defendant to recover that sum. *Id.* at ¶¶ 19-20.

Under "Count I: Negligence," Plaintiff claims that Defendant carelessly and negligently designed, manufactured, marketed, distributed, supplied, and/or sold the kitchen range by: (1) "allow[ing] the accidental activation of the front-mounted knobs [to] ignite a fire"; (2) failing to use "thermal set plastic, which is standard for other similar products, and which made the [kitchen range] inadequate for [cooking in a residential setting] and thus presented an increased fire hazard"; (3) failing to "conduct[] adequate testing or inspection to ensure that the kitchen range would be safe to use in a residential setting; (4) failing to "instruct or warn users that the [kitchen range] posed a fire risk when used in a residential setting"; and (5) failing to timely include the kitchen range in a product recall when Defendant knew or reasonably should have known that the kitchen range posed a fire hazard when used as intended in a residential setting. *Id.* at ¶ 23. As a result of these failings, Plaintiff alleges that the defective kitchen range caused the fire in Blay's home on April 22, 2024. *Id.* at ¶ 24.

Under "Count II: Strict Liability," Plaintiff reiterates many of the same allegations in Count I. *Id.* at ¶ 33. Plaintiff alleges that the kitchen range was defective in its design, in its failure to use thermal set plastic, in its lack of testing and inspection, and in its failure to warn or instruct. *Id.* As a result of these failings, Plaintiff alleges that the kitchen range failed and caused the fire. *Id.* at ¶ 34.

Importantly, for purposes of this Order, the complaint does not reference the Indiana Products Liability Act ("IPLA") and does not allege that the kitchen range deviated from its intended design. *See generally* [Dkt. 1-1.]

### III. Discussion

Defendant raises three issues in its motion to dismiss: (1) the complaint fails to state a claim because it does not identify IPLA as the legal cause of action; (2) the complaint does not

plausibly allege a defect; and (3) the complaint does not allege that a defect in the kitchen range caused the fire. [Dkt. 21 at 2.] The Court will address each of these issues in turn.

**A. IPLA Preemption**

Defendant argues that the complaint should be dismissed because IPLA preempts common law products liability suits that sound in tort. Defendant is correct that IPLA preempts such claims, but its conclusion that the complaint should be dismissed is unpersuasive. Where, as here, the complaint does not identify IPLA as the legal cause of action and instead identifies the action as one of negligence or strict liability, courts typically construe the complaint as raising IPLA claims rather than dismissing the complaint outright.

IPLA governs "all actions that are: (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product; regardless of the substantive legal theory or theories upon which the action is brought." Ind. Code § 34-20-1-1. “A product can be defective within the meaning of [IPLA] because of a manufacturing flaw, a defective design or a failure to warn of the dangers while using the product.” *Campbell Hausfeld/Scott Fetzer Co. v. Johnson*, 109 N.E.3d 953, 956 (Ind. 2018). "Design defect and failure-to-warn liability [under IPLA] is grounded in negligence, and the statute imposes strict liability for claims based on a manufacturing defect." *Payton v. Johnson & Johnson*, 2021 WL 1923799, at *4 (S.D. Ind. May 13, 2021) (citing Ind. Code § 34-20-2-2, 3). IPLA "governs all product liability actions, whether the theory of liability is negligence or strict liability." *Robinson v. Davol Inc.*, 913 F.3d 690, 693 (7th Cir. 2019) (cleaned up).

When a complaint in a products liability case asserts negligence and strict liability without expressly referencing IPLA as the legal cause of action, courts construe the complaint as asserting IPLA claims rather than dismissing the complaint outright. *Id.*; *see also* *Atkinson v. P&*

*G-Clairol, Inc.*, 813 F. Supp.2d 1021, 1024-24 (S.D. Ind. 2011) ("collecting cases"). In doing so, courts may summarily dismiss "theories of liability which are simply not recognized under Indiana law." *See Bradburn v. CR Bard, Ind.*, 2020 WL 3065024, at *3-4 (S.D. Ind. June 9, 2020) (construing plaintiff's complaint as asserting IPLA claims but also dismissing failure-to-warn and design defect claims premised on strict liability because such claims do not have a basis in law).

Construing plaintiff's complaint as asserting IPLA claims is consistent with the rule that complaints plead claims and not theories. *See Orr v. Shicker*, 147 F.4th 734, 740 (7th Cir. 2025) ("A plaintiff need not plead legal theories, nor allege each element that the plaintiff will need to prove. Rather, to defeat a motion to dismiss, a plaintiff must allege only enough facts to state a claim to relief that is plausible on its face.") (cleaned up); *Rabe v. United Air Lines, Inc.,* 636 F.3d 866, 872 (7th Cir.2011) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error."); *Ryan v. Ill. Dep't of Children & Family Servs.,* 185 F.3d 751, 764 (7th Cir.1999) ("We have consistently held that plaintiffs are not required to plead legal theories. While a plaintiff may plead facts that show she has no claim, she cannot plead herself out of court by citing to the wrong legal theory or failing to cite any theory at all.") By contrast, Defendant's argument that the complaint should be dismissed for failing to identify IPLA as the legal cause of action is inconsistent with Rule 8's pleading requirements.

Defendant relies on a products liability case from the Northern District of Indiana where the court dismissed the complaint and ordered plaintiff to file an amended complaint that expressly set forth IPLA as the basis for liability, *see Cavendar v. Medtronic, Inc.*, 2016 WL 6599744 (N.D. Ind. Nov. 8, 2026). But that order is non-precedential and distinguishable from the facts of this case. In *Cavendar*, the complaint was a "scattershot of causes of action," where

legal terms "pop up like weeds" without "any factual context," leading to a "confusing presentation of claims" that did not provide defendants with notice of the nature of the claims against them. *Id.* at *3. As the court explained, "it's not that the complaint is insufficient just because it lacks express reference to IPLA. Rather, it is insufficient because it lacks context from which the defendant and the court can ascertain the precise nature—or more specifically the precise legal and factual bases—of plaintiff's claims." *Id.* (cleaned up).

Unlike the complaint in *Cavendar*, the complaint in this case is not so disorganized or scattershot that it fails to provide Defendant with notice of the claim. It is clear from the complaint that this is a products liability action arising from a kitchen range that accidentally ignited and started a fire in Blay's home on April 22, 2024, and the complaint identifies two specific defects that allegedly caused the fire—its tendency to accidentally ignite when a person or pet contacts the front-mounted knobs and a failure to use thermal set plastic. IPLA is the exclusive remedy for this injury. Requiring Plaintiff to amend the complaint simply to identify IPLA as the legal cause of action is not required under Rule 8 and would unduly delay the proceedings.

In sum, Defendant's motion to dismiss the complaint for failing to identify IPLA as the legal cause of action is **DENIED**. The Court construes the complaint as asserting claims under IPLA. Plaintiff's design defect and failure-to-warn claims could potentially proceed on a theory of negligence, and its manufacturing defect claim could potentially proceed on a theory of strict liability. *See Payton*, 2021 WL 1923799, at *4. The Court will consider whether the complaint sufficiently pleads those claims in the sections below.

**B. Defects**

Defendant argues the complaint fails to plead that the kitchen range was unreasonably dangerous, that it was manufactured in a defective way, or that Defendant failed to provide Blay with adequate warnings. [Dkt. 21 at 4-9.]

**1. Unreasonably Dangerous**

Under IPLA, "a manufacturer who places into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer is subject to liability for physical harm caused by that product." *Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1007 (7th Cir. 2020) (cleaned up) (quoting Ind. Code § 34-20-1-1). A product is defective if it is in a condition "not contemplated by reasonable persons among those considered expected users or consumers of the product" and "will be unreasonably dangerous . . . when used in reasonably expectable ways." *Kaiser*, 947 F.3d at 1007 (quoting Ind. Code § 34-20-4-1).

IPLA's unreasonably dangerous standard "focuses on the reasonable expectations of the consumer." *Kaiser*, 947 F.3d at 1014. "Whether a product is unreasonably dangerous is a distinct inquiry and must be established whether the claim is based on a manufacturing defect, a design defect, or a defective warning." *Id.* at 1008. The "unreasonably dangerous inquiry is usually a question of fact that must be resolved by the jury." *Id.* at 1015 (internal quotations omitted).

Defendant argues that the complaint fails to allege that the kitchen range was unreasonably dangerous because it relies solely on "conclusory allegations" and "buzzwords." [Dkt. 21 at 5.] The Court does not agree. The complaint alleges that the kitchen range was unreasonably dangerous because it was prone to accidental ignitions when people or pets bump into the front-mounted knobs. The complaint also alleges a more technically phrased defect—

the failure to use "thermal set plastic." *Id.* at ¶¶ 21e, 33c. According to the complaint, thermal set plastic "is standard for other similar products," and the lack of this material "left the [kitchen range] susceptible to melting and increased fire damage when used in a residential setting[.]" *Id.* Thus, the complaint alleges that Defendant breached its duty of care to its consumers, including Blay, by selling a residential kitchen range that ignites accidentally and fails to meet industry standards for fire safety.

Defendant also argues that "a manufacturer is not obliged to build the safest possible product, at least where the danger in question is known to a reasonable consumer," and that here "[a] reasonable consumer would be aware of the fire dangers of a range[.]" *Id.* at 5, 6. Again, the Court does not agree. A reasonable consumer would know that a kitchen range poses some danger when it is in use, but they would not expect a kitchen range to ignite accidentally when it is not in use. Further, a reasonable consumer would expect a kitchen range to incorporate materials that comply with basic safety standards—not necessarily that the kitchen range be the safest possible product, but that it complies with basic safety standards that are commonly used in similar products.

Of course, these are merely allegations. But at this juncture, only plausible allegations are required. And the Court finds that Plaintiff has plausibly alleged that the kitchen range was unreasonably dangerous. Accordingly, Defendant's request for dismissal on this ground is **DENIED**.

### 2. Manufacturing Defect

"A product contains a manufacturing defect when it deviates from its intended design." *Westchester Fire Ins. Co. v. American Wood Fibers, Inc.*, 2006 WL 3147710, at *5 (N.D. Ind. Oct. 31, 2006) (citing Restatement (Third) of Torts § 2 (1998)).

Defendant argues the complaint does not adequately plead a manufacturing defect claim because it does not allege that the kitchen range deviated from its intended design. [Dkt. 21 at 6-8.] Plaintiff argues that this failure does not require dismissal at this stage of the proceedings. [Dkt. 25 at 11.]

Other courts have dismissed manufacturing defect claims when the complaint failed to allege that the product deviated from its intended design. *See*, *e.g.* *Warner-Borkenstein v. American Medical Systems, Inc.*, 2020 WL 364019, at *3 (N.D. Ind. Jan. 21, 2020) (dismissing plaintiff's IPLA manufacturing defect claim because the "complaint offers no factual explanation how the product deviated materially from its intended design or specifications . . . or alternatively how the product exposed a risk to [plaintiff] beyond that contemplated by the ordinary consumer precisely because of a manufacturing defect." 2020 WL 364019, at *3 (N.D. Ind. Jan. 21, 2020); *Payton*, 2021 WL 1923799, at *7 (dismissing IPLA manufacturing defect claim because the complaint "does not allege facts showing how, in even the most general sense, [plaintiff's] Implant deviated from the intended design of [the product].").

Here, the complaint alleges that the kitchen range was sold with two specific defects: accidental ignitions caused by contact with the front-mounted knobs, and the failure to use thermal set plastic. But the complaint does not plead a manufacturing defect because it does not allege that either defect deviated from the kitchen range's intended design. Accordingly, Defendant's motion to dismiss Plaintiff's defective manufacturing claim is **GRANTED**, and the manufacturing defect claim is **DISMISSED without prejudice**. As this case proceeds, Plaintiff may seek leave to amend the complaint to add a manufacturing defect claim if it has reasonable grounds to allege that the kitchen range had a defect that deviated from its intended design.

Nothing in this Order precludes Plaintiff from seeking information in discovery about whether the kitchen range suffered from defects in design or in manufacturing.

**3. Failure to Warn**

Defendant argues that the complaint does not adequately plead a failure-to-warn claim because it does not describe the warnings that were provided to Blay, does not explain how those warnings were inadequate, and does not allege that the failure to warn caused the alleged injuries. [Dkt. 21 at 8-9.] The Court disagrees.

As explained above, a negligence standard applies to failure to warn claims under IPLA. *Cook v. Ford Motor Co.*, 913 N.E.2d 311, 319 (Ind. Ct. App. 2009); *TRW Vehicle Safety Systems, Inc. v. Moore*, 936 N.E.2d 201, 214 (Ind. 2010). For failure to warn claims, "the party making the claim must establish that the manufacturer or seller failed to exercise reasonable care under the circumstances . . . in providing the warnings or instructions." Ind. Code § 34-20-2-2. More generally, "[n]egligence claims have three elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty and (3) injury to the plaintiff proximately caused by the defendant's breach." *Hayden v. Franciscan Alliance, Inc.*, 131 N.E.3d 685, 693 (Ind. Ct. App. 2019). "[W]hether a warning is reasonable is generally a question of fact for the trier of fact to resolve." *Kaiser*, 947 F.3d at 1015 (internal quotations omitted).

The Court finds that the complaint adequately pleads a failure-to-warn claim. The complaint alleges that the kitchen range was defective because it was prone to accidental ignitions and did not include thermal set plastic. [Dkt. 1-1 at ¶¶ 23b, 23c.] Defendant allegedly knew or should have known that these defects presented a fire hazard. *Id.* at ¶¶ 23c, 23i. Yet Defendant did not warn Blay about these defects or the fire hazard they posed. *Id.* at ¶¶ 23j, 23k. Ultimately, the kitchen range's defects resulted in accidental ignition when a dog contacted the

front-mounted knobs, which in turn caused a fire in Blay's home. These allegations plausibly state a failure-to-warn claim under IPLA. Contrary to Defendant's argument, the complaint "do[es] not have to have alleged specific facts about how [the] warnings were defective." *Stuhlmacher v. Home Depot U.S.A., Inc.*, 2011 WL 1792853, at *5 (N.D. Ind. May 11, 2011) (collecting cases); *see also Bradburn*, 2020 WL 3065024, at *4 (plaintiff stated a failure to warn claim by alleging that a defendant "failed to act reasonably to . . . [a]dequately inform or warn" plaintiff about the product's dangers); *Barton v. Galella*, 2022 WL 10077734, at *5 (S.D. Ind. Oct. 17, 2022) ("IPLA does not mention or otherwise require 'proposed warnings' to proceed on a failure to warn theory"). Accordingly, Defendant's request to dismiss Plaintiff's failure to warn claim is **DENIED**.

**C. Causation**

Defendant argues that the complaint "provides no facts showing a causal connection between any purported defect in this [kitchen] range and the fire." [Dkt. 32 at 8.] The Court does not agree.

"Causation-in-fact is ordinarily a factual question reserved for determination by the jury. But where reasonable minds cannot disagree as to causation-in-fact, the issue may become a question of law for the court." *Kaiser*, 947 F.3d at 1016 (cleaned up)

The complaint alleges that the kitchen range was defective because it could accidentally ignite when a pet or person made contact with the front-mounted knobs. [Dkt. 1-1 at ¶¶ 11-12.] Fire investigators determined that the cause of the fire started when the kitchen range's front-mounted knobs were "inadvertently activated by a dog[.]" *Id.* at ¶ 10. So, rather than relying solely on legal conclusions and buzzwords, as Defendant argues, the complaint alleges specific

facts about the kitchen range's defects and alleges that those defects caused a fire at Blay's home. Thus, the complaint creates a plausible inference that the kitchen range's defects caused the fire.

Defendant also argues that the complaint "alleges no facts connecting the purported failure to warn to the fire[.]" [Dkt. 21 at 10.] But it is fairly easy to imagine how Blay might have acted differently had she been properly warned of the kitchen range's fire hazards. Perhaps she would have removed the front-mounted knobs, left her dog locked up, avoided setting combustibles near the kitchen range unattended, or avoided purchasing the kitchen range altogether. These possibilities and others would be consistent with the allegations expressly set forth in the complaint. *See American Inter-Fidelity Exch. v. American Re-Insurance Co.*, 17 F.3d 1018, 1022 (7th Cir. 1994) (explaining that a plaintiff "may point to (**or even hypothesize**) facts consistent with the existing language of the complaint" to prevail against a motion to dismiss) (emphasis added); *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (holding that when a court rules on a motion to dismiss, "the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.").

As this case proceeds, Defendant may explore whether there is evidence that Blay would have acted differently if Defendant had warned her about the kitchen range's defects. Defendant may also explore whether the fire investigators were correct in concluding that the fire in Blay's home was caused when a dog activated the front-mounted knobs. But at this stage of the proceedings, only plausible allegations are necessary—"[m]atching facts against legal elements comes later." *Sanjuan*, 40 F.3d at 251. Drawing all reasonable inferences in Plaintiff's favor, the Court finds that the complaint plausibly alleges that the kitchen range's defects caused the fire at Blay's home. Accordingly, Defendant's request that the complaint be dismissed for lack of causation is **DENIED**.

## IV. Conclusion

For the reasons explained above, Defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. [Dkt. 20.] Plaintiff shall proceed on a design defect and a failure-to-warn claim IPLA. Plaintiff's manufacturing defect claim is **DISMISSED without prejudice**.

SO ORDERED.

Dated: 21 AUG 2026

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email